DAN H. COOPER (7. Ghermon Lateke Tucker)
BRADLEY JAMES ARMSTRONG (8. Ja'Cory Dante Ranger)
S. JONATHAN YOUNG (10. Jerome Noel Ranger)
P.O. Box 2493
Tucson, AZ  85702-2493
Telephone (520) 795-0525
Fax: (520) 327-6731
State Bar No. 012598
jon@williamsonandyoung.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 11-1013-TUC-RCC |
| Plaintiff, | JOINT MOTIONS IN LIMINE |
| vs. | |
| (7.) GHERMON LATEKE TUCKER, (8.) JA'CORY DANTE RANGER, (10.) JEROME NOEL RANGER, | |
| Defendants. | |

It is expected that excludable delay under Title 18 U.S.C. §3161(h)(1)(F) will occur as a result of this motion or of an order based thereon.

The defendants, jointly through their listed attorneys, hereby urge the following motions in limine:

1. Motion to suppress (CR 585) statements by Mexican codefendants recorded by CI on confrontation grounds pursuant to *Crawford v. Washington.*

   *Crawford* defines "testimonial statements" to include police interrogation.

   Interrogation by a paid informant is surreptitious interrogation by police. *Massiah v. United States*; *United States v. Henry*.

   "Deliberately eliciting" responses is interrogation. *Massiah*; *Henry*.

2. Motion to suppress (CR 745) the warrantless nighttime (4:00 a.m.) 11/11/10 search of Mayco Ledezma-Prieto's residence.

   Both Ghermon Tucker and Ja'Cory Ranger have standing as overnight guests.

   *United States v. Crews* holds that a defendant is not a suppressible fruit, but only where (1) the witness's presence in court, (2) the defendant's presence in court, and (3) <u>the witness's ability to identify the defendant based on observations at the time of the crime</u> were all not come at by the exploitation of the defendant's Fourth Amendment rights.  The Phoenix Police Department's ability to identify both defendants in court as present that night results from observations made in violation of both defendants' fourth amendment rights.

3. Motion to suppress (CR 702) unnecessarily suggestive pretrial or in-court identification of Ghermon Tucker as being present at the 2/4/11 meeting in Phoenix.

   The rationale for a suggestive ID motion (unreliability) applies whether or not Ghermon Tucker is still in the case – the remaining defendants do not want to be convicted with unreliable evidence any more than Ghermon Tucker does. *Stovall v. Denno*, 388 U.S. 293, 302 (1967) ("so unnecessarily suggestive and conducive to irreparable mistaken identification").

4. Motion to suppress (CR 732) unnecessarily suggestive pretrial or in-court identification of eight of the black codefendants as being present at a supposed meeting of coconspirators in Phoenix on 3/2/11.

   The government has not disclosed this identification yet, but FBI SA Edwards testified at the grand jury on February 2, 2012, to such a meeting attended also by Yovani Valenzuela-Lopez and his brother-in-law, Jorge Medina, neither of whom know any of the black codefendants.

   The identifications were, in all likelihood, made from 8x10 glossy photographic show-ups before Agent Edwards realized the suggestive nature of the technique.

5. Motion to suppress any other pretrial or in-court identifications tainted by further, as yet undisclosed, 8x10 glossy photographic show-ups.

6. Rule 404(b) motion to suppress (CR 272) the Mexican codefendants' unsupported claims that unnamed blacks committed unspecified home invasions on unknown dates while supposedly working for the Mexican codefendants.

The Mexican codefendants made these outrageous claims while simultaneously engaged in making demonstrably false claims of contract killings, of decapitations, and of kidnappings of cartel members ("puffing"). These claims are insufficiently supported to go to the jury under *Huddleston v. United States*.

As the Government has previously claimed to be unaware of these unsupported claimed bad acts (CR 293), probably because of their inherent vagueness, the statements claiming bad acts by the black codefendants are set forth below:

| | |
|---|---|
| 9, 245 | ". . . when occupants of stash houses see Black males in police uniforms . . ." |
| 152 | ". . . that's what the Blacks do." |
| 155 | "Mayco is the boss of one of the black crews." |
| 156 | ". . . nor did he know how many home invasions Brandy's crew has conducted in the past." |
| 157 | ". . . he knows were two Black males who conduct home invasions reside." |
| 194 | ". . . Miami was in charge of a group of Blacks who would enter the houses they would rip-off." |
| 626 | ". . . these black guys are crazy." |
| 627 | ". . . a truck that carries the tools of the black guys." |
| 629 | ". . . they're good workers." |
| 636 | ". . . blacks are more tricky. . . . he sent the blacks up there for another job." |
| 645 | ". . . they send the black guys because they don't give a shit. . . . the black guys go in anywhere. . . . they dress as police and wear the vest and everything." |
| 686 | ". . . the black guys . . . are extreme but as long as they get paid they won't hurt the kid." |
| 688 | ". . . the black dudes . . . just got one yesterday and it turned out well. . . there is no problem with them. . . he |

|  |  |
|---|---|
|  | has been working with them for years." |
| 689 | ". . . the black guys come to work. . . the black guys dress as police." |
| 692 | ". . . the black guys work well." |
| 694 | ". . . Mexicans or blacks . . . both work well. . . the blacks have the vests . . . and even wore helmets." |
| 916 | ". . . the black dudes . . . they are hard-working . . ." |
| 4007-4008 | "N-n-no, no. These guys take care of that. That's why we bring the niggers. They don't give a fuck. . . They go in wherever. . . They dress up as – as police officers. . . . With everything, vests and everything. . . . But we need them because they already know how. . . the brother-in-law - his brother-in-law, is in prison and he's the one who runs all the guys. . . . But these guys are the most effective. These guys will break them." |
| 4011 | ". . . these guys even knock down iron doors. They bring devices to knock them down." |
| 4014 | ". . . they work with me all the time. These guys are trustworthy. They are trustworthy." |

7. Motion to suppress non-testifying codefendant's post-arrest statements on confrontation grounds pursuant to *Bruton v. United States*.

8. Motion to suppress evidence of alleged gang affiliation previously granted on May 29, 2012.

   The defendants further move to suppress items possibly arguably indicative of gang affiliation found in the Expedition and the Escalade, such as sports jerseys, baseball caps and rap CD's.

9. Motion to suppress as irrelevant and unduly prejudicial the bullet holes in Ja'Cory Ranger's Escalade put there by Damond Reagan's Taurus .45.

10. Motion to suppress as irrelevant and unduly prejudicial the self-inflicted gunshot wound to Ja'Cory's leg.

11. Motion to suppress as irrelevant and unduly prejudicial Ghermon Tucker's flight in Jerome Ranger's Expedition on 1/6/11.

12. Motion to suppress as irrelevant and unduly prejudicial the fact that the Colt Python seized in this case was used in the solved murder of a Vacaville, California, man by his stepson, who is now serving a 50-year sentence for the murder.

13. Motion to suppress Arduawn Bryant's prior arrest for possession of a defaced weapon which he did not realize was defaced and for which he was never charged.

Dated July 5, 2012.

*s/Dan H. Cooper*
Attorney for Ghermon Lateke Tucker

*s/Bradley James Armstrong*
Attorney for Ja'Cory Dante Ranger

*s/S. Jonathan Young*
Attorney for Jerome Noel Ranger


Copies of the foregoing
served electronically or by other
means on July 5, 2012, to:

James Lacey
Kimberly E Hopkins
Assistant United States Attorney