JOHN S. LEONARDO
United States Attorney
District of Arizona
JAMES T. LACEY
KIMBERLY E. HOPKINS
Assistant U.S. Attorney
Evo A. Deconcini U.S. Courthouse
405 W. Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone: (520) 620-7300
kimberly.hopkins@usdoj.gov
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | |
| Plaintiff, | CR 11-1013-TUC-RCC |
| vs. | GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTIONS IN LIMINE |
| Ghermon Lateke Tucker (007), Ja'Cory Dante Ranger (008) Jerome Noel Ranger (010) | (Doc. 767) |
| Defendants. | |

Comes now the United States of America by its attorneys, John S. Leonardo, United States Attorney, and James T. Lacey and Kimberly E. Hopkins, Assistant United States Attorneys, and hereby files its response to the Defendants' Joint Motions in Limine (Doc. #767).

**1. Defendants' Joint Motion to Suppress Statements by Mexican Codefendants Recorded by CI (Doc. 585)**

The confrontation clause does not bar the admission of statements made by the Mexican coconspirators. Under *Crawford*, statements made during and in furtherance of a conspiracy are non-testimonial, so admission of such statements does not require meeting the requirements of the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 53-53 (2004). Additionally, the statements made by the Mexican codefendants are non-

testimonial because the declarants had no expectation that the statements might be used later at trial. *U.S. v. Larson*, 460 F.3d 1200, 1213 (9th Cir. 2006). Furthermore, the government's use of an undercover informant does not violate the Fourth Amendment because the defendants were the subjects of an ongoing investigation and had not yet been formally indicted. *United States v. Henry*, 447 U.S. 264, 272 (1980). Defendants who are suspected of ongoing criminal activity have no protection from their own misplaced confidence in an undercover government informant, *Hoffa v. United States,* U.S. 293 (1966).

**2.  Defendants' Joint Motion to Suppress the Warrantless Nighttime Search of Mayco Ledezma-Prieto's residence on November 11, 2010. (Doc. 745)**

The government does not intend to introduce evidence from the search of Mayco Ledezma-Prieto's residence on 11/11/10, in its case in chief at trial. However, if the defense - either in opening statements or cross examination of government witnesses - causes the issue of prior home invasions to become relevant, the government may seek to introduce such evidence.

**3.  Defendants' Joint Motion to Suppress Unnecessarily Suggestive Pretrial or In-Court Identification of Ghermon Tucker as Being Present at the February 4, 2011, Meeting in Phoenix. (Doc. 702)**

On February 14, 2011, agents met with the CHS and showed him eighteen photographs. The photographs included individual drivers license photographs of the registered owners of the vehicles observed by surveillance agents at the February 4, 2011, pre-planning meeting and the registered owner of the Chevrolet Impala observed at the Chipman Road residence. Two of the drivers license photographs depicted black males; Ghermon Tucker and Michael Austin. The drivers license photographs were without name or biographical identification. The CHS identified the photograph of Ghermon Tucker as the black male with Ledezma-Prieto at the February 4th meeting. At the Suppression Hearing in March of 2011, the CHS also made an in-court identification of Ghermon

Tucker as the black male at the February 4th meeting. On May 23, 2012, Ghermon Tucker entered a plea of guilty, and admitted that he was present at the February 4th meeting.

At the June 28, 2012, Motion to Vacate Hearing, the government agreed on the record, that it would not use Ghermon Tucker's admissions at his change of plea hearing against him at trial. The government also agreed that it would not introduce the CHS's pre-trial identification of Ghermon Tucker on February 14th. However, any in-court identifications by the CHS are admissible.

Based on the totality of the circumstances in this case, the pretrial photographic identification procedures used on February 14th were not impermissibly suggestive. *Simmons v. United States,* 390 U.S. 377, 384 (1968); *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985). Assuming arguendo, that the court finds that the pretrial identification procedure was impermissibly suggestive, any in-court identifications should not be excluded because the identification of Tucker was sufficiently reliable pursuant to *Neil v. Biggers*. The CHS had ample opportunity to view Tucker, as he had direct visual contact of Tucker during the February 4th meeting. Even though the meeting was short in duration, the CHS had a more than adequate opportunity to view Tucker and make a reliable identification. *See United States v. Lustig*, 555 F.2d 737, 749 (9th Cir. 1977). The degree of attention by the CHS was also sufficient as there were a total of five people at the meeting, and they were the only individuals in the building. Ten days later, when presented with photographs, the CHS positively identified Tucker. Moreover, the CHS's record for reliability is a good one, as he also positively and correctly identified Gregorio Guzman-Rocha, Mayco Ledezma-Prieto and Jamie Santiago Lopez-Lorenzo as being present at the February 4th meeting. The CHS also positively and correctly identified Tucker at the Suppression Hearing. Therefore, taken together, these circumstances leave little room for doubt that the CHS' identification at the suppression hearing was reliable and correct, and any in-court identification of Ghermon Tucker at trial is admissible. *United States v.*

*Montgomery*, 150 F.3d 983, 993 (9th Cir. 1998).

4. **Defendants' Joint Motion to Suppress Unnecessarily Suggestive Pretrial or In-Court Identification of Eight of the Black Codefendants as Being Present at a Meeting in Phoenix on March 2, 2011. (Doc. 732)**

The defendants' motion is premature as the government has not yet identified the cooperators that will be testifying at trial. The government will, a week before trial, identify the persons who will be possible witnesses at trial. That will be the appropriate time for the court to entertain the defendant's motion to suppress.

5. **Defendants' Joint Motion to Suppress any Other Pretrial or In-Court Identifications Tainted by Further, as yet Undisclosed, 8x10 Glossy Photographic Show-ups.**

The defendants' motion is premature as the government has not yet identified the cooperators or any other government witnesses that will be testifying at trial. The government will, a week before trial, identify the persons who will be possible witnesses at trial. That will be the appropriate time for the court to entertain the defendant's motion to suppress.

6. **Defendants' Joint Rule 404(b) Motion to Suppress the Mexican Codefendants' Unsupported Claims that Unnamed Black Crew Members Committed Unspecified Home Invasions on Unknown Dates While Working for the Mexican Codefendants. (Doc. 272)**

The defendants' motion is premature as the government has not yet identified the cooperators that will be testifying at trial. Until the government determines the witnesses that will be used at trial, the government is unable to identify the prior criminal activity committed by the defendants with the Mexican codefendants. Moreover, all parties will need to discuss with the Court how the issue of prior home invasions will be dealt with at trial. For example, if a Mexican codefendant committed a home invasion with the black codefendants, all parties will have to decide if this will be explained on direct or cross examination during trial.

However, any statements regarding why the black crew members were going to be used in this offense are relevant if the statements were made during and in furtherance of

the conspiracy. Moreover, any statements that relate to the March 2, 2011, attempted home invasion are relevant if discussed by any member of the conspiracy, during and in furtherance of the conspiracy.

7. **Motion to Suppress Non-Testifying Codefendants' Post Arrest Statements on Confrontation Grounds Pursuant to *Bruton v. United States*.**

The government does not intend to introduce non-testifying codefendants' post arrest statements in its case in chief. However, post arrest statements made by the defendants going to trial may be relevant and admissible under *Bruton*.

8. **Motion to Suppress Evidence of Alleged Gang Affiliation.**

The government does not intend to introduce evidence of gang membership or gang affiliation in its case in chief at trial. However, if the defense - either in opening statements or cross-examination of government witnesses - causes the issue of bias to become relevant, the government may seek to introduce such evidence. Additionally, the government does intend to introduce evidence of gang membership for impeachment purposes to prove bias on the part of any potential defense witness.

9. **Motion to Suppress Bullet Holes in JaCory Ranger's Escalade Put There by Damond Reagan's Taurus .45.**

The government does not intend to introduce evidence of the bullet holes or of the bullet extracted from JaCory Ranger's Cadillac Escalade in its case in chief at trial.

10. **Motion to Suppress Alleged Self Inflicted Gunshot Wound to JaCory Ranger's Leg.**

The government does not anticipate bringing into evidence in its case in chief at trial that JaCory Ranger allegedly shot himself in the leg.

11. **Motion to Suppress Ghermon Tucker's Flight in Jerome Ranger's Ford Expedition on January 6, 2011.**

The government does not intend to introduce evidence in its case in chief at trial that Ghermon Tucker was arrested for unlawful flight from law enforcement while driving Jerome Ranger's Ford Expedition. However, the government may make reference to the

fact that Tucker was driving the same vehicle back on January 6, 2011, that he was stopped in on March 2, 2011. The government does not anticipate bringing into the evidence the circumstances of Tucker's flight.

**12. Motion to Suppress the Fact that the Colt Python Seized in this Case was used in the Solved Murder of a Man in Vacaville, California.**

The government does not intend to introduce this evidence in its case in chief at trial. However, the government will introduce that the Colt Python was seized from the glove box of the Cadillac Escalade on March 2, 2011, and that defendant JaCory Ranger admitted to borrowing the weapon from a man named Omar.

**13. Motion to Suppress Ardawwn Bryant's Prior Arrest for Possession of a Defaced Weapon.**

The government does not intend to introduce this evidence in its case in chief at trial.

Respectfully submitted this 20th day of July, 2012.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*s/Kimberly E. Hopkins*

JAMES T. LACEY
KIMBERLY E. HOPKINS
Assistant U.S. Attorneys

Copy of the foregoing served electronically
this 20th day of July, 2012, to:

Dan H. Cooper, Esq.
Bradley J. Armstrong, Esq.
Stephen J. Young, Esq.