DAN H. COOPER, BAR NO. 004900
Attorney for Defendant
136 W. Simpson Street
Tucson, AZ 85701
(520) 770-1414
dcooper@cooperudall.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | CR-11-1013-TUC-RCC-HCE |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MOTION FOR NEW TRIAL |
| | ) | |
| GHERMON LATEKE TUCKER, | ) | |
| | ) | |
| Defendant. | ) | |

      Pursuant to Rule 33, Federal Rules of Criminal Procedure, Ghermon Tucker moves for a new trial on the grounds that the interest of justice so requires. This motion is supported by the accompanying Memorandum of Points and Authorities

      Respectfully submitted this  4th  day of September, 2012.

                                By  s/ *Dan H. Cooper*
                                    Dan H. Cooper

# MEMORANDUM OF POINTS AND AUTHORITIES

Ghermon Tucker was convicted on August 24, 2012 of conspiracy with intent to distribute cocaine and with possession of a firearm in furtherance of a drug trafficking crime. He was acquitted of two counts of the four-count indictment. His co-defendants, Jerome and Ja'Cory Ranger, were acquitted of all counts. The specific grounds for this court to grant Mr. Tucker's motion for new trial are as follows:

1. Evidentiary item 2C, the transcript of a purported planning meeting between conspirators, was read to the jury in Mr. Tucker's absence and without a waiver of his presence.

2. The failure to sever Mr. Tucker's trial from that of his co-defendant violated his right to confrontation pursuant to *Bruton v. United States* particularly in light of the introduction by the government of the co-defendant's inculpatory statement.

3. The identification of Gherman Tucker by the informant, Tony Gutierrez, as being present at the planning meeting was unduly suggestive and violated all tenets of due process.

4. The government failed to disclose *Brady* material on two different critical issues: a) Tony Gutierrez was arrested with 50 pounds of marijuana. Less than one week prior to trial the government disclosed two reports written by DEA agents documenting the arrest. The disclosure came too late to subpoena agents, who were out of state, to come testify. More important, the explanation given by Gutierrez for why he was not indicted conflicted with the written reports of the agents; b) Gutierrez claims he paid taxes on money he received from the government. This claim was belied at trial by his claim he "never" received cash for his services in this case. In fact,

lead FBI agent Edwards claimed he had given cash to the informant. The government never disclosed the informant's tax returns so his claim could not be verified.

5. The prosecutor was guilty of misconduct by his repeated reference in his closing argument to the defendants coming to "our town" to commit crimes.

6. The government used co-conspirator statements, pursuant to the Federal Rules of Evidence, which violated Mr. Tucker's right to confrontation pursuant *Crawford v. Washington*, 541 US 36 (2004). Mr. Tucker was not able to cross-examine a single person, other than the informant, whose voice appeared on the tapes made by the informant.

## I. MR. TUCKER NEVER WAIVED HIS PRESENCE FOR THE READING TO THE JURY OF A CRITICAL TRANSCRIPT VIOLATING THE CONFRONTATION CLAUSE OF THE 6TH AMENDMENT.

A criminal defendant has the constitutional right to be present during the read back of testimony to the jury. *Hegler v. Borg*, 50 F.3d 1472 (9th Cir. 1995). The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to be present in the courtroom at every stage of the trial. *Illinois v. Allen*, 397 US 337(1978). The defendant must personally waive his right to be present at the read back. *United States v. Kupau*, 781 F.2d 740 (9th Cir. 1986). While analysis of this violation falls under the harmless error standard, *Brecht v. Abrahamson*, 507 US 619 (1991), the court must take certain precautions. In *Kupau*, for instance, the judge admonished the jury that the agent playing back the tape was to be a "nonentity." In the instant case the transcript of the most important evidence in the case, item 2C, the conversation at the so-called planning meeting, was played to the jury by the same US Attorney employee who sat with the prosecutors throughout the trial. No warning was given and no waiver

procured. The error was not harmless and Mr. Tucker had the right to be present at the read back.

The right of a criminal defendant to be present at every stage of his trial is guaranteed by the due process clause of the Fifth Amendment and by the confrontation clause of the Sixth Amendment. *Illinois v. Allen*, 397 US 337 (1970); *Snyder v. Massachusetts*, 291 US 97 (1934). The 9th Circuit has held that the protection offered by Rule 43, Federal Rules of Criminal Procedure, "is broader than the Sixth Amendment right to confrontation and the fifth amendment due process rights." Rule 43 holds that the defendant "shall be present…at every stage of the trial." *United States v. Christopher*, 700 F2.d 1253 (9th Cir. 1983). In an Arizona Court of Appeals case, *State v. Levato*, 183 AZ 558, 905 P.2d 567 (1995), the defendant's involuntary absence from the return of verdicts deprived him of his right to confrontation. The court held the error was structural, and not simply trial error, and mandated reversal. Structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 US 279 (1991). The reading of the transcript in the instant case without Mr. Tucker present was structural error.

**II. THE FAILURE TO SEVER MR. TUCKER'S TRIAL VIOLATED HIS RIGHT TO CONFRONTATION PURSUANT TO BRUTON V. UNITED STATES.**

*Bruton v. United States*, 391 US 123 (1968), holds that if a co-defendant in a joint trial has made a statement implicating another co-defendant and the prosecution seeks to use the statement, the co-defendant has the right to severance. The Confrontation Clause bars admission of the co-defendant's statement even if the defendant's own statement is admitted. *Cruz v. New York*, 481 US 186 (1987).

The introduction of Jermone Ranger's statement was particularly harmful to Ghermon Tucker because it contrasted with Mr. Tucker's own statement. The inability to cross-examine Ranger about the statement was devastating. For instance, the jury heard Ranger had come to Tucson just to "check it out" which contrasted with the defendant's own refusal to give a reason. Similarly, Ranger discussed weapons, which the jury heard, and Tucker was not able to cross-examine him about those weapons. Since it was Tucker who the government claimed was at the heart of the "black crew", allowing Ranger's statements to go without cross-examination cemented in the jury's mind that, in fact, Tucker was the main conspirator. The admission of the co-defendant's statement was devastating to Tucker and was error.

### III. THE IDENTIFICATION OF GHERMON TUCKER BY THE INFORMANT VIOLATED DUE PROCESS.

As reflected by the jury verdict, the February 4, 2011, "planning" meeting was central to the case. The subsequent identification by the confidential informant of the black male who was present at the meeting carried enormous weight with the jury. The informant identified Ghermon Tucker after a procedure charitably described as suggestive. In fact, the FBI essentially told the informant who to select.

Identification procedures that are unnecessarily suggestive are prohibited by the Due Process Clause of the US Constitution. *Stovall v. Denno*, 388 US 293 (1967). That seminal case on pre-trial identification held that one-on-one identifications are suggestive. *Stovall v. Denno* at 302. Unnecessarily suggestive show-ups are inadmissible absent a showing of reliability. *Neil v. Biggers*, 409 US 188 (1972). The identification by the informant in the instant case fails the *Biggers* test: 1) The informant described a man from Tucson; 2) the description was of a man smaller than Mr. Tucker; 3) the amount of time spent with the black man was 12 minutes; 4) the identification

procedure was a one-photo show-up; 5) the procedure took place ten days after the informant viewed the black male. Moreover, the entire process was not video or audio-taped leaving to speculation what actually took place. The entire procedure could not have been more suggestive.

IV. THE GOVERNMENT FAILED TO TIMELY DISCLOSE *BRADY* MATERIALS.

The government is under the obligation to provide the defense with material exculpatory evidence. *Brady v. Maryland,* 373 US 83 (1963). Seven days prior to the beginning of trial the government disclosed nearly 2000 pages of documents. Included in those documents were two DEA reports totaling seven pages concerning the prior arrest of the testifying paid government informant. The reports were written in 2003 by agents who lived outside the state of Arizona. At trial the informant testified and characterized the arrest as a "misunderstanding." Prior to trial, Mr. Tucker requested that the government disclose the informant's tax returns for the last year since he had been paid $110,000 for his work in this case. The government argued it did not have the return and the court did not order disclosure. The issue became more acute when, at trial, the informant testified he had never received cash for his work in this case. That testimony was contradicted by the lead FBI agent. The informant also testified he had paid taxes on the money he earned but the agent testified no one from the government verified the truth of that statement.

The failure to disclose the tax return is critical given the importance of the informant to the case. The February 4 meeting, and the informant's identification of Ghermon Tucker's presence at the meeting, were essential to the government's conviction of Mr. Tucker. The credibility of the informant was at the heart of the

government's case. That credibility could have been disputed by the falsification of the tax return which, given the testimony about the cash, is in fact likely. At the very least the court should have ordered an ex parte examination of the return.

The use of informants is fraught with peril, *United States v. Bernal-Obeso,* 989 F.2d 331 (9th Cir. 1993) and may raise serious questions of credibility. *On Lee v. United States*, 343 US 747 (1952). The government has a duty to turn over to the defense all material information casting doubt on the government's credibility. *Giglio v. United States,* 405 US 150 (1972). A conviction was reversed in *United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991), because the government should have known its witness was committing perjury. The government stands "uniquely positioned to guard against perfidy." *Bernal-Obeso, supra*. The government cannot hide behind its lack of possession of the tax return. *Kyles v. Whitley* 115 S.Ct 1555 (1995). It decided to use the witness and could have received the return from the witness. Moreover, the government disclosed the reports detailing the informant's 2003 arrest in the week prior to trial. The seven pages detailing the arrest were included in 2000 pages of disclosure defense counsel received the week prior to trial. Disclosing the items at such a late date, when it was impossible for defense counsel to do anything about it, was a *Brady* violation.

## V. THE PROSECUTOR'S CLOSING ARGUMENT WAS IMPROPER AND HIGHLY PREJUDICIAL.

The prosecutor's closing argument was improper as a matter of law. The prosecutor is a career prosecutor. He knows that certain language is improper. *People of Territory of Guam v. Shymanovitz*, 157 F.3d 11511 (9th Cir. 1998). In *Shymanovitz* the court found reversible error when the prosecutor focused on homosexual behavior which was not relevant to the offense. Urging a jury to decide a matter on factors other than

those it is instructed to consider is improper. *Sandoval v. Calderon*, 241 F.3d 765 (9th Cir. 2001). Summaries, simply put, should not appeal to the jury's emotions or role as conscience of the community. *United States v. Martinez-Medina*, 279 F.3d 105 (1st Cir. 2002). That is precisely what the prosecutor in Mr. Tucker's trial did when, on six separate occasions, he talked to the jury about the defendants who had traveled from Phoenix to "our town" to commit a serious crime. When defense counsel finally objected to this line of attack the court ordered the prosecutor to stop. It is improper to argue that a conviction will "protect the community." *United States v. Moreno*, 991 F.2d 943 (1st Cir. 1993); *United States v. Beasley*, 2 F.3d 1551 (11th Cir. 1993). The 9th Circuit has consistently cautioned against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury. *United States v. Koon*, 34 F.3d 1416 (9th Cir. 1994). Protecting community values is not an appropriate argument prosecutors may make. *United States v. Monaghan*, 741 F.2d 1434 (DC cir. 1984). Asking a jury to make a statement due to a crisis in society is wholly improper. *United States v. Leon-Reyes*, 177 F.3d 816 (9th Cir. 1999). The prosecutor's repeated reference to the blacks coming to "our town" was precisely such a statement. In essence, the prosecutor was placing the jury on the side of the government and all law-abiding citizens against the horde of intruders to "our town." Such argument was improper and mandates a new trial.

**VI. THE USE OF TAPED STATEMENTS VIOLATED *CRAWFORD V. WASHINGTON.***

Prior to trial Mr. Tucker moved this court to preclude admission of statements of Mexican co-defendants recorded by the informant. This motion was pursuant to *Crawford v. Washington*, 541 US 36 (2004). *Crawford* includes police interrogation under the penumbra of testimonial statements. Thus, interrogation by a police informant is tantamount to interrogation by the police. *Maine v. Moulton*, 474 US 159 (1985). The

government introduced the recordings as statements of co-conspirators. What is critical is that not one of the recordings included a <u>single word</u> by the black co-defendants. And the government did not call at trial a single co-defendant whose voice was on a tape recording made by the informant. Thus, Mr. Tucker was not able to cross-examine any of the "witnesses" against him which surely makes a mockery of *Crawford* and its progeny. It was error to allow the government to introduce at will all recordings made by the informant of co-defendants who did not testify when the case cried out for the cross-examination of those witnesses. Mr. Tucker was convicted without the ability to confront and cross-examine witnesses against him.

*Maine v. Moulton, supra*, involved a case where the police arranged to record conversations between the defendant and the co-defendant who was a government informant at a meeting at which both the defendants, without counsel, planned to discuss defense strategy. The Supreme Court held defendant's 6th Amendment right to counsel was violated. The instant case is more egregious. Although the acts of the informant in the instant case were pre-indictment, the government knew it would use the statements and Mr. Tucker was denied his 6th Amendment right to confrontation pursuant to *Crawford*.

**CONCLUSION**

There are multiple reasons why a new trial should be granted in this case. These reasons, standing separately, mandate a new trial. Taken together they demonstrate that numerous due process violations inhibited Mr. Tucker's ability to defend himself. Moreover, the errors were not harmless as Mr. Tucker, according to the government, was at the heart of the conspiracy. Exculpatory evidence regarding the informant was either at the last minute or not at all. The structural and due process errors at trial are reflected

by the jury verdict where the co-defendants, one of whom owned weapons found in the vehicle, were acquitted. Mr. Tucker was denied the right to cross-examine one of the co-defendants, where statement was introduced to the jury, and the other co-defendants whose taped statements were used by the government to inculpate him. He was denied the right to be present as the jury heard critical evidence against him. And the prosecutor's reference to "our town" was a blatant call to the jury's emotions. For all of the reasons stated in this motion a new trial should be granted.

      Respectfully submitted this  4th  day of September, 2012.

                                      By  s/ *Dan H. Cooper*
                                        Dan H. Cooper