```
                IN THE UNITED STATES DISTRICT COURT

                       DISTRICT OF ARIZONA

UNITED STATES OF AMERICA

vs.                                       CR-11-1013-TUC-RCC

GHERMON LATEKE TUCKER, et al.,

            Defendants.
_____

                                          August 20, 2012
                                          Tucson, Arizona
```

## JURY TRIAL

## DAY NINE

### BEFORE THE HONORABLE RANER C. COLLINS
### UNITED STATES DISTRICT JUDGE

```
Court Reporter:        Erica R. Grund, RDR, CRR
                       Official Court Reporter
                       405 W. Congress Street
                       Tucson, Arizona 85701

      Proceedings prepared by computerized realtime
                         translation
```

```
 1                    A P P E A R A N C E S

 2

 3     For the Government:      James T. Lacey
                                 Kimberly E. Hopkins
 4                               Assistant U.S. Attorneys

 5

 6     For Ghermon Tucker:      Dan Cooper
                                 Cooper & Udall PC
 7

 8

 9     For Jerome Ranger:       Stephen Jonathan Young
                                 Williamson & Young
10

11

12     For Ja'Cory Ranger:      Bradley James Armstrong
                                 Armstrong Law Office
13
```

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE COURT: Go on the record. Show the |
| 3 | absence of the defendants, that the defendants each |
| 4 | waived their presence in court on Friday |
| 5 | afternoon. |
| 6 | Show that the Court and counsel have been |
| 7 | discussing the instructions. Mr. Cooper requested |
| 8 | a withdrawal instruction, so the Court agreed to |
| 9 | give 8.24. He also requested a mere presence |
| 10 | instruction. The Court agreed to give 6.10. |
| 11 | They also requested that I modify the |
| 12 | instruction specifically to Mr. Jorge -- |
| 13 | Mr. Gutierrez because he received benefits in the |
| 14 | case, and the Court agreed to modify it in a |
| 15 | similar way as to the one for Mr. Medina. |
| 16 | Mr. Young asked for an entrapment |
| 17 | instruction but he acknowledged that the facts of |
| 18 | this case and the Ninth Circuit case law would not |
| 19 | normally permit him to get that particular |
| 20 | instruction, but he wanted to make sure that it was |
| 21 | made for the record that he had requested the same. |
| 22 | The Court and counsel also discussed the |
| 23 | forms of verdict and agreed that the form of |
| 24 | verdict should read less than five kilograms, five |
| 25 | or more kilograms, 50 kilograms or more, or 65 |

kilograms, depending on which version of the facts the jury decides to accept.

    And Mr. Lacey asked for an aiding and abetting instruction. He had charged aiding abetting in Counts 3 and 4, which is being given over Mr. Cooper's strong objection.

    MR. COOPER: Strong objection.

    THE COURT: Any further record to make, Mr. Lacey.

    MR. LACEY: Not as to the jury instructions but something else, when you're finished.

    THE COURT: How about you, Mr. Cooper?

    MR. COOPER: No, Your Honor.

    THE COURT: Mr. Armstrong?

    MR. ARMSTRONG: No, thank you.

    THE COURT: Mr. Young?

    MR. YOUNG: Well, as I'm looking at this, Your Honor, I think I'm seeing a multiplicity problem. I get that confused with duplicity, but I think multiplicity is the one where there is one offense that's charged in two different counts, and I'm seeing a multiplicity problem as to Counts 3 and 4.

    They both have identical elements, but

1 they have two different ways of proving the element
2 of a drug trafficking offense, so what I'm seeing
3 is a different method of proof and not necessarily
4 a different element.  In one count the drug
5 trafficking offense is proven with a conspiracy.
6 In the other it's proven with an attempted
7 possession.
8        What that does, it does ensure jury
9 unanimity on the method of proof, but I don't think
10 that we have to have unanimity on the method of
11 proof as to the drug trafficking offense.  It's not
12 necessary.  All there has to be is unanimity on the
13 element of drug trafficking offense.
14        THE COURT:  I think I follow you, except
15 that the Government has charged two specific
16 crimes.  The two specific crimes are conspiracy
17 which stands alone, they could have charged
18 conspiracy in this case; and they also charged
19 attempted possession of cocaine, which could have
20 stood by itself too.
21        And if you're going to do that, it seems
22 to make sense that the firearms allegation has to
23 be attached to the specific counts rather than just
24 one firearm allegation.
25        MR. LACEY:  It does and there's case law

1  we can get if the Court wants to support that.
2          MR. YOUNG: I would say that they are
3  certainly two different ways that they could
4  support the element of drug trafficking offense.
5  They've supported it two different ways.
6          It looks a lot like if there were a felony
7  murder charge predicated on a robbery and
8  predicated on a kidnapping. There's still only one
9  dead body. There is still only one felony murder
10 at the end of the day. There is just two different
11 predicate felonies, and this looks like just two
12 different predicate felonies to me.
13         THE COURT: Okay. You've made your
14 record.
15         Do you want to talk more about the
16 entrapment?
17         MR. YOUNG: With respect to the
18 entrapment, there is a split in the circuits, and
19 the Ninth Circuit has decided that it will not
20 allow a derivative entrapment defense even where a
21 specific person is targeted, and it seemed to me
22 that the informant in this case was specifically
23 targeting the blacks.
24         So what I'm requesting is contrary to the
25 Ninth Circuit case law. Some of the other circuits

1 have gone in a different direction than that, in
2 fact, I think all of the circuits that I was able
3 to find.
4       THE COURT: All right.
5       MR. COOPER: I'll join both of the
6 objections.
7       MR. ARMSTRONG: Same here. Thank you.
8       MR. LACEY: And Judge, as far as the
9 entrapment, I would direct the Court to U.S. v.
10 Spentz, S-p-e-n-t-z, a Ninth Circuit case from
11 February 2011, and the citation is 653 F.3d 815,
12 and that says the defense, that entrapment is not
13 applicable given the facts of the case there, which
14 are close to being identical to here, where you
15 have an undercover going down the path he went
16 down.
17       But anyway, that case addresses right on
18 point the issue Mr. Young's raising and says that
19 he's wrong.
20       THE COURT: I forgot one instruction.
21 There was an instruction requested by Mr. Young or
22 Mr. Cooper with regard to the prior conviction of
23 witness Medina, and it reads, "You have heard
24 evidence that the witness has previously been
25 convicted of a crime. You may consider this

evidence only as it may affect their believability as a witness," and I'll give that one.

Mr. Lacey you wanted to put something on the record at this point?

MR. LACEY: Yes, Your Honor.

THE COURT: Can you hear?

THE COURT REPORTER: Yes, sir.

MR. LACEY: I usually have a pretty loud voice.

Your Honor, I made counsel aware and likewise the Court today that Friday afternoon actually it was Friday evening about 5:30, I was advised by agent Edwards that one of his FBI agents had been in court last week when Jorge Medina was testifying. He was the cooperating conspirator in this case that we called.

Agent Loos, L-o-o-s, was an FBI agent who was in court seated directly behind approximately four black females and two black males. At some point during the witness' testimony, Agent Loos overheard one of the females say, and I quote, "Oh, man, they're going to kill that guy," closed quotes.

Again, I just want that on the record. We have a slew of these threats that have popped up

1  during the course of this case, and this is the
2  most recent one.  I just wanted it on the record.
3         That's all.
4         MR. COOPER:  Well, just so that if there
5  is an appellate court that ever hears this, I want
6  to make it clear Ghermon Tucker had nothing to do
7  with anybody sitting in the gallery saying anything
8  since he was sitting here next to me.
9         MR. ARMSTRONG:  I'm not sure how to
10 respond.  I don't know -- I don't know whether
11 they're accusing the Ranger family of this, if
12 there's any names attached to these threats.
13        THE COURT:  There are no names attached to
14 them.
15        MR. YOUNG:  I guess -- are you through?
16        MR. ARMSTRONG:  Yeah, and also obviously
17 Ja'Cory has been over here behaving himself quite
18 well throughout the whole trial.  He's not been in
19 communication with his family.
20        MR. YOUNG:  The record should reflect that
21 Mr. Cooper then killed that guy a few minutes
22 later.
23        MR. LACEY:  Anyway, Judge, we've had other
24 threats we've put on the record --
25        MR. COOPER:  Figuratively.

MR. LACEY: We've had other threats put on the record that were attributable to Ghermon Tucker. Another one, as you know, were directed towards Ms. Hopkins by Mr. Young's client at some point early on in the proceedings.

So anyway, that should be put on the record.

THE COURT: I'll let the statement be placed on the record. It could be taken several different ways. It could be -- I'll leave it at that. It could be taken different ways. I'm not sure it was a direct threat, but it's on the record.

MR. LACEY: Okay.

THE COURT: And I have a feeling that the FBI agent's going to have Detective Loos here tomorrow to see if he can specifically identify which woman said that. Something tells me that, but I'm just sort of guessing.

(Off the record.)

THE COURT: Show on the record that defense counsel asked for a withdrawal instruction. The Government pointed out to the Court that, in the withdrawal instruction itself, it says that the Court should only give a

1  withdrawal instruction if there's an overt act
2  required, and the Court said, that may well be what
3  that says, but in a case like this, someone should
4  have an opportunity to withdraw from the
5  conspiracy, and the Court is going to nevertheless
6  give the withdrawal instruction, to which Mr. Lacey
7  had a very mild objection.
8      MR. LACEY:  If that.
9      THE COURT:  If that.
10     MR. LACEY:  After you convinced me.
11     (Proceedings concluded in this matter.)

# C E R T I F I C A T E

I, Erica R. Grund, do hereby certify that I took the machine shorthand notes in the foregoing matter; that the same was transcribed via computer-aided transcription; that the preceding pages of typewritten matter are a true, correct, and complete transcription of those proceedings ordered, to the best of my skill and ability.

Dated this 2nd day of January, 2013.

s/Erica R. Grund
Erica R. Grund, RDR, CRR
Official Court Reporter